663 So.2d 1362 (1995)
Manuel SCUDDER, Sylvia Callman, Irving Stein, William Berkof, Max Zimmerman, et al., Appellants,
v.
GREENBRIER C. CONDOMINIUM ASSOCIATION, INC. and Sheffield B. Condominium Association, Appellees.
Nos. 93-2229, 93-3506, and 94-1207.
District Court of Appeal of Florida, Fourth District.
November 29, 1995.
*1363 Michael B. Small and Lisa S. Small of Small, Small & Small, P.A., Palm Beach, for appellants.
Kenneth G. Spillias of the Law Office of Kenneth G. Spillias, P.A., West Palm Beach, and Rod Tennyson of Rod Tennyson, P.A., West Palm Beach, for appellees.

ON MOTION FOR REHEARING
GUNTHER, Chief Judge.
We deny both appellant's and appellee's motions for rehearing, but substitute the following to correct a misstatement made on page 19 of our October 11, 1995 slip opinion.
Once again, this court is confronted with the assessment of off-site transportation costs in the condominium context. The appellants (the Unit Owners) were the defendants in the trial court in five condominium lien foreclosure actions brought by the appellees, two condominium associations (the Associations). The Associations sought to assess off-site transportation services as a common expense against the Unit Owners. The trial court agreed with the Associations' position and the Unit Owners are now appealing a final judgment upholding the validity of the Associations' assessment of transportation costs as a common expense. Additionally, *1364 the Unit Owners are appealing an order awarding the Associations attorney's fees and costs. Although we uphold the assessment of transportation costs as a common expense, we reverse because the "one-rider rule" unreasonably discriminates against multiple-resident units.

I. THE FACTS
The Associations are two condominium associations situated in the retirement community of Century Village located in West Palm Beach. Beginning January 1, 1988, the Associations began to assess the Unit Owners for off-site transportation services as a common expense. The Unit Owners objected to the assessment, claiming that the assessment was improper considering this court's decision in Rothenberg v. Plymouth # 5 Condominium Ass'n, 511 So.2d 651 (Fla. 4th DCA), rev. denied, 518 So.2d 1277 (Fla. 1987). Nevertheless, the Associations recorded liens of approximately $85.00 per Unit Owner representing the disputed annual assessment for off-site transportation services.
In 1988, the Florida Legislature adopted an amendment to section 718.115(1), Florida Statutes, which became effective on July 1, 1988. The amendment provided that common expenses could include reasonable transportation services if the services had been provided from the date the control of the board of administration of the association was transferred from the developer to the unit owners or provisions stating as such were provided for in the condominium documents or by-laws. § 718.115(1), Fla. Stat. (Supp. 1988).
Armed with the amended statute, the Associations filed six separate actions to foreclose the recorded liens against the Unit Owners. At the conclusion of the non-jury trial, the trial court entered a final judgment in favor of the Unit Owners on four of the five material issues. The Associations, however, succeeded on one issue; the trial court concluded that the Unit Owners had to pay for the post July 1, 1988 assessments for the off-site transportation services as a common expense because the transportation services had been provided "at a time" when the developers turned control of the association over to the residents. Thereafter, the trial court granted the Associations' motion for attorney's fees and costs pursuant to section 718.303, Florida Statutes (1989).
Subsequently, the Unit Owners sought review of both the final judgment and the award of attorney's fees in this court. This court, in Scudder v. Greenbrier C Condominium Ass'n Inc., 566 So.2d 359 (Fla. 4th DCA 1990), reversed and remanded so that the trial court could determine whether the transportation services had been continuously provided by the Associations from the date control was turned over to the Unit Owners. Logically, the panel declined to address the issue of attorney's fees and costs because the trial court's resolution of the case on remand would necessarily impact the award of attorney's fees and costs.
Upon remand, in the second Scudder trial, the trial court was confronted with four distinct issues: (1) whether the transportation services had been continuously provided by the Associations from the date control was turned over to the Unit Owners; (2) whether the transportation service had to have been continuously paid for as a common expense; (3) whether the Associations "one-rider rule" was valid; and (4) whether Florida Statutes Chapter 88-148 was constitutional. Throughout the lengthy second trial, the majority of the evidence adduced revolved around the factual history of the transportation system at Century Village. After considering all the evidence, the trial court found that the transportation system was continuously provided by the Associations. Furthermore, the remand court found that neither the relevant statute nor the opinion rendered in the previous appeal in this case required the Associations to prove that the transportation system was specifically paid for as a common expense continuously during the relevant period. Next, the trial court held that the Associations demonstrated a reasonable basis for the "one-rider rule" based upon the limited seating available on the transportation services. Finally, the trial court found that Florida Statutes Chapter 88-148 was not unconstitutionally vague.
Thereafter, on July 16, 1993, the Associations moved for attorney's fees pursuant to *1365 section 718.303, Florida Statutes (1993). The trial court was confronted with three phases for which the entitlement and the amount of fees had to be determined; the initial trial, the first appeal and the second trial. The trial court reinstated the initial award to the Associations for the first trial and awarded the Associations $44,205 in attorney's fees and costs for the second trial. Additionally, the trial court determined that neither party was liable for those costs and fees incurred in the first appeal. We now turn to the issues presented on this appeal.

II. WHO MUST HAVE PROVIDED THE TRANSPORTATION SERVICES?
The first issue this court must resolve involves the provider of the services. The Unit Owners assert that the transportation services must have been continuously provided by the Associations from the date control of the board was transferred before the services can be assessed as a common expense while the Associations suggest that nothing in the statute requires it to specifically be the provider of the services. In its final judgment, the remand trial court found:
Over the years in which the transportation services were continuously provided, both the operators actually implementing the services, and the method of payment have varied; nevertheless, the Court finds by the greater weight of evidence, that the services were provided by and through the associations, which over the years contracted for the services through their manager or related organizations, such as the United Civic Organization, or umbrella associations within the Century Village complex ...
Plaintiffs [the Associations] carried their burden in trial which was to prove by the greater weight of the evidence that transportation services had been continuously provided by the association to the unit owners during the relevant period.
Thus, this court must first determine whether the statute requires the Associations to continuously provide the transportation services and if so, whether the above finding is supported by competent substantial evidence in the instant case.
To begin the inquiry, this court must necessarily analyze the statute itself. Section 718.115(1)(a), Florida Statutes (1993), provides:
Common expenses also include reasonable transportation services ... which are reasonably related to the general benefit of the unit owners even if such expenses do not attach to the common elements or property of the condominium. However, such common expenses must either have been services or items provided from the date the control of the board of administration of the association was transferred from the developer to the unit owners or must be services or items provided for in the condominium documents or bylaws.
On its face, the statute merely requires that the services be continuously provided; the provider of the services is not identified. Although this court must ascribe the plain and obvious meaning to the words contained in section 718.115(1)(a), we should not interpret the statute in such a manner as to produce an unreasonable or absurd result. See State v. Egan, 287 So.2d 1 (Fla. 1973); City of St. Petersburg v. Siebold, 48 So.2d 291 (Fla. 1950). If the Associations were not required to provide the transportation services before it could assess them as a common expense, an absurd result would follow. It would be ludicrous to allow the Associations to assess the Unit Owners for transportation services where such services were provided through an independent entity having no relation to the Associations. Such an interpretation would give condominium associations in Florida a virtual windfall. As such, it appears that the proper interpretation of section 718.115(1)(a) requires condominium associations to have continuously provided the transportation services before those services can be assessed as a common expense.
Moreover, the historical facts surrounding the amendment to section 718.115 supports such an interpretation. The amendment to section 718.115 was passed in response to this court's opinion in Rothenberg v. Plymouth # 5 Condominium Ass'n, 511 So.2d 651 *1366 (Fla. 4th DCA), rev. denied, 518 So.2d 1277 (Fla. 1987). In Rothenberg, the condominium association contracted to provide bus transportation service for its unit owners to areas outside the condominium property. Rothenberg, 511 So.2d at 651. Thus, the Rothenberg association was actually providing the transportation services in question when it declared the transportation contracts as a common expense.
On appeal, this court held that the transportation service could not be assessed as a common expense because the service did not directly relate to the operation, maintenance, repair or replacement of the condominium property. Id. at 652. In response to the Rothenberg opinion, the legislature amended section 718.115 thereby allowing transportation services to be assessed as a common expense where the association was already providing such services. § 718.115(1)(a), Fla. Stat. (Supp. 1988). As such, the amendment appears to benefit those associations that may have provided transportation services to their unit owners in the good faith belief that they were authorized to do so. Scudder v. Greenbrier C Condominium Ass'n, Inc., 566 So.2d 359, 361 n. 1 (Fla. 4th DCA 1990). In other words, the legislature intended to statutorily authorize continuing assessments for transportation expenses where such service had been continuously provided by the association to the unit owners from the date control was transferred. Scudder, 566 So.2d at 361. Thus, an interpretation of the amendment which requires the association to have been the provider of the continuous transportation service is not only consistent with the attenuating circumstances surrounding the amendment, but also produces a reasonable result.
Utilizing that interpretation, we find that although the evidence was somewhat contradictory, the trial court was presented with substantial competent evidence to support a finding that the Associations, through different related organizations, continuously provided the transportation system in question. As such, we must affirm the trial court's finding that the transportation system was continuously provided by the Associations since the time control of the condominium was transferred to the Unit Owners. Jordan v. Boisvert, 632 So.2d 254 (Fla. 1st DCA 1994); Malver v. Sheffield Indus., Inc., 502 So.2d 75 (Fla. 3d DCA 1987).

III. WHETHER, PRIOR TO 1988, THE TRANSPORTATION SYSTEM HAD TO HAVE BEEN ASSESSED AS A COMMON EXPENSE?
Assuming that the Associations were the providers of the continuous transportation service, the next logical question is whether the Associations were required to assess the cost of such service as a common expense from the date control was transferred to the Unit Owners. The trial court below determined that section 718.115(1)(a) did not require the transportation service to be continuously assessed as a common expense. We now address the propriety of that finding.
Again, neither section 718.115(1)(a) nor this court's prior interpretation of the statute in Scudder v. Greenbrier C Condominium Ass'n, Inc., 566 So.2d 359 (Fla. 4th DCA 1990), require that the transportation costs be assessed as a common expense. Rather, all that is required is that the association continuously provide the transportation services. A careful analysis of section 718.115 along with an understanding of the definitions utilized in the condominium act, however, reveal that the transportation service need not have been assessed as a common expense prior to the amendment in 1988.
In amending section 718.115(1)(a), the legislature used the coordinating conjunction "or" to delineate between service continuously provided and services outlined in the condominium documents. See § 718.115(1)(a), Fla. Stat. (Supp. 1988). The definition of a common expense is all expenses and assessments which are properly incurred by the associations for the condominium. See § 718.103(8), Fla. Stat. (1993). Common expenses include:
the expenses of the operation, maintenance, repair, replacement, or protection of the common elements and association property, costs of carrying out the powers and duties of the association, and any other expense, whether or not included in the *1367 foregoing, designated as common expense by this chapter, the declaration, the documents creating the association, or the bylaws.
§ 718.115(1)(a), Fla. Stat. (1993).
Prior to the 1988 amendment of section 718.115, off-site transportation costs were not considered an expense incurred in the operation, maintenance, repair, replacement or protection of the common elements and association property. Rothenberg v. Plymouth # 5 Condominium Ass'n, 511 So.2d 651 (Fla. 4th DCA), rev. denied, 518 So.2d 1277 (Fla. 1987). Furthermore, prior to the amendment, transportation costs were not declared as a common expense anywhere in the Florida Condominium Act. See §§ 718.101 et seq., Fla. Stat. (1985). Thus, transportation costs could only have been assessed as a common expense prior to the 1988 amendment if the association's documents or bylaws provided as such.
In amending the statute and determining that reasonable transportation costs could be considered common expenses, the legislature distinguished between transportation services continuously provided by the association and those services provided for in the condominium documents and by-laws. § 718.115(1)(a), Fla. Stat. (Supp. 1988). In construing a statute or a declaration of condominium, words of common usage should be construed in their plain and ordinary sense. Koplowitz v. Imperial Towers Condominium, Inc., 478 So.2d 504 (Fla. 4th DCA 1985); Martin v. Ocean Reef Villas Ass'n, Inc., 547 So.2d 1237 (Fla. 5th DCA 1989), rev. denied, 557 So.2d 35 (Fla. 1990). If the previously provided transportation service needed to be assessed as a common expense, there would be no need for the legislature to distinguish between services continuously provided and those contained in the condominium documents and bylaws. If the services were required to be assessed as a common expense they would had to have been included in the condominium documents or by-laws. The provision relating to services continuously provided must be given effect. Thus, requiring the transportation service to be assessed as a common expense prior to the amendment would obliterate the legislature's use of the word "or" in the amendment to section 718.115(1)(a).
Accordingly, we hold that the transportation service continuously provided from the date control was transferred does not have to be assessed as a common expense during the same time. Therefore, the trial court did not err in finding that section 718.115 does not require that the transportation services which were provided had to have been continuously assessed as a common expense.

IV. THE CONSTITUTIONALITY OF SECTION 718.115
On appeal, the Unit Owners contend that the amendment to section 718.115(1)(a) is unconstitutionally vague and ambiguous. The portion of the statute challenged by the Unit Owners reads:
However, such common expenses must either have been services or items provided from the date the control of the board of administration of the association was transferred from the developer to the unit owners or must be services or items provided for in the condominium documents or bylaws.
§ 718.115(1)(a), Fla. Stat. (Supp. 1988).
Statutes must be clearly worded so that persons of common intelligence have fair warning of what is prohibited, required or permitted. The test utilized to determine the vagueness of a statute, therefore, is whether the statute is specific enough to put persons of common intelligence and understanding on notice of the proscribed conduct. State v. Hodges, 506 So.2d 437 (Fla. 1st DCA), rev. denied, 515 So.2d 229 (Fla. 1987); Trushin v. State, 475 So.2d 1290 (Fla. 3d DCA 1985), rev. denied, 486 So.2d 598 (Fla. 1986). Moreover, it is this court's obligation to find the statute constitutional if the application of ordinary logic and common understanding would permit the same. State v. Hodges, 614 So.2d 653 (Fla. 5th DCA 1993). Most vagueness challenges are directed at penal statutes, and thus, an even greater latitude is afforded civil statutes in light of a vagueness challenge. See Seniors Civil Liberties Ass'n, Inc. v. Kemp, 965 F.2d 1030, 1036 (11th Cir.1992). Therefore, any doubts *1368 as to the constitutionality of the statute must be resolved in favor of its constitutionality. Department of Legal Affairs v. Rogers, 329 So.2d 257, 263 (Fla. 1976).
Applying the ordinary meaning of the words contained in the statute, it is evident that section 718.115(1)(a) is not unconstitutionally vague. The legislature, through the amendment, intended to allow condominium associations the opportunity to assess reasonable transportation costs as common expenses so long as the association was providing the services continuously from the date control was transferred to the unit owners. See Scudder v. Greenbrier C Condominium Ass'n, Inc., 566 So.2d 359 (Fla. 4th DCA 1990). People of common understanding and intelligence have fair warning of what is required before reasonable transportation costs can be assessed as a common expense. Either the services must have been continuously provided by the association or the services must be provided for in the condominium documents or by-laws. § 718.115(1)(a), Fla. Stat. (Supp. 1988). Merely because the statute in question was subject to differing interpretations throughout litigation does not render it unconstitutionally vague. Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815, 820 (Fla. 1983). Accordingly, the amendment to section 718.115(1)(a) is not unconstitutionally vague and the trial court was correct in concluding the same.

V. THE "ONE-RIDER RULE"
The most troubling aspect of this complex case is the "one-rider rule." In the instant case, the Unit Owners were assessed for the transportation services as a common expense. In return, one pass was supplied to the Unit Owners thereby allowing only one resident per unit to utilize the transportation system. If a second person from the same unit wanted to also use the transportation system at the same time, an additional surcharge was required. Below, the trial court upheld the "one-rider rule" concluding that limited seating and availability was a reasonable basis for the rule.
We must first address the surcharge itself. The transportation system utilized in the instant case was assessed as a common expense pursuant to section 718.115(1)(a). Condominium associations are strictly a creature of statute, and their powers and duties, including the raising of funds, must be strictly construed. Eastpointe Property Owners' Ass'n, Inc. v. Cohen, 505 So.2d 518 (Fla. 4th DCA 1987); Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA), cert. denied, 254 So.2d 789 (Fla. 1971). The manner of collecting funds for the payment of common expenses is explicitly set forth in the Condominium Act:
Except as otherwise provided by this chapter, funds for the payment of common expenses shall be collected by assessments against unit owners in the proportions of percentages provided in the declaration. In a residential condominium, unit owners' shares of common expenses shall be in the same proportions as their ownership interest in the common elements.

§ 718.115(2), Fla. Stat. (1993) (emphasis added). The difficulty with the transportation costs assessment lies with the fact that, unlike other common element assessments, the unit owners do not possess an ownership interest in the transportation system. While, for example, the pool is owned by all the unit owners pro rata, a transportation system is not a fixed, permanent common element, but rather is merely a service provided to the unit owners which is incapable of ownership.
Nevertheless, because condominiums are a creature of statute, we must apply the plain meaning of the Condominium Act to the instant situation. Martin v. Ocean Reef Villas Ass'n, Inc., 547 So.2d 1237 (Fla. 5th DCA 1989), rev. denied, 557 So.2d 35 (Fla. 1990). Pursuant to section 718.115(2), the funds needed for the payment of the transportation system at Century Village should be collected based upon the Unit Owners' proportional ownership interest in the common elements. In the instant case, however, the transportation system is being funded in two distinct methods: (1) a common assessment based upon the Unit Owners' proportional ownership interest in the common elements; and (2) a per rider surcharge above and beyond the common assessment for those Unit Owners having more than one person per unit utilizing the transportation system. The *1369 funds collected pursuant to the per rider surcharge are necessarily being employed to run and maintain the transportation system. As such, all the funds necessary for the existence of the transportation system are not being collected pursuant to the Unit Owners' proportional ownership interest in the common elements. Thus, the funds necessary to finance the transportation system, as a common expense, are being collected in a manner contrary to the procedure proscribed by section 718.115(2).
Moreover, the effect of the "one-rider rule" is both unreasonable and discriminatory. In reviewing rules and regulations promulgated by condominium associations this court has adopted a test of reasonableness. Juno by the Sea North Condominium Ass'n v. Manfredonia, 397 So.2d 297, 303 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 611 (Fla. 1981) (citing Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180, 181 (Fla. 4th DCA 1975)). There are no hard and fast rules because
inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he [she] might otherwise enjoy in separate, privately owned property.
Hidden Harbour Estates, Inc., 309 So.2d at 181-82.
However, the "one-rider rule" cannot meet the liberal "reasonableness" test espoused above. By only giving one rider pass per unit, the rule penalizes the owners of those units which have more than one person residing in the unit. If the extra resident in the "multiple-resident unit" wishes to utilize the transportation system, he/she must pay above and beyond what was assessed as a common expense. At the same time, the single resident in the single unit is not required to pay a surcharge and is receiving the same service. Thus, additional riders in "multiple-resident units" are subsidizing the transportation system for the benefit of the single unit owner. Hence, the practical effect of the "one-rider rule" is to invalidly convert the transportation system from a common expense benefiting every unit owner into a limited common expense benefiting only the single unit owner. See § 718.103(17), Fla. Stat. (1993) ("Limited common elements" means those common elements which are reserved for the use of a certain condominium unit or units to the exclusion of other units, as specified in the declaration of condominium).
Obviously, capacity is a major consideration when implementing a transportation system. However, the capacity of the transportation system should be determined by the needs of the unit owners, not by the number of units. If the present transportation system is inadequate to meet the needs of all the Unit Owners, the burden in turn should fall upon all the Unit Owners to increase the services provided through higher proportional assessments for common expenses. The additional riders in "multiple-resident units" should not be required to subsidize the transportation system through the "one-rider rule" in an effort to obtain the same service available to the single resident in a single unit.
In sum, the per rider surcharge, as a manner of collecting funds for the transportation system, is contrary to the procedure proscribed by the Condominium Act. Furthermore, the net effect of the "one-rider rule" is unreasonable because it discriminates against additional riders in "multiple-resident units" who wish to use the transportation system. As such, the trial court erred in finding the "one-rider rule" reasonable.

VI. ATTORNEY'S FEES
In light of our holding, it is necessary for the trial court to re-determine the entitlement to attorney's fees and costs for the second trial. See generally, Pan American Bank of Sarasota v. Hancock, 352 So.2d 912 (Fla. 2d DCA 1977) (costs are not generally awarded against a successful party). Nevertheless, the Associations' award of $17,599.95 which was reinstated for the first trial must be affirmed because the Associations must still be considered the prevailing party of the initial trial. The central issue *1370 presented in the initial trial was whether the Associations could assess the transportation costs as a common expense against the Unit Owners. On this issue, the Associations prevailed in the initial trial, the second trial and on this appeal. The "one-rider rule" was not injected, nor litigated until the second trial and, therefore, should not be determinative of the prevailing party status in the initial trial. As such, upon remand, the trial court is directed to re-evaluate the award of attorney's fees and costs for the second trial.

VII. CONCLUSION
Section 718.115(1)(a), Florida Statutes (Supp. 1988), requires that before transportation services may be assessed as a common expense, the services must have been continuously provided by the associations from the date that control of the board was transferred to the unit owners. In the instant case, on remand, the trial court was provided with competent substantial evidence to support the finding that the Associations did, in fact, continuously provide the transportation services in question. Furthermore, nothing in section 718.115(1)(a), nor this court's previous interpretation of the statute, requires the Associations to have funded the transportation services continuously as a common expense. Moreover, the amendment to section 718.115(1)(a) is not unconstitutionally vague. However, the "one-rider rule" implemented in the instant case unreasonably requires additional riders in "multiple-resident units" to subsidize the transportation system for the benefit of the single unit owner. We note that all additional issues raised in this appeal are either without merit or rendered moot by this opinion.
Accordingly, this case is reversed and remanded to the trial court for further proceedings consistent herewith.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
GLICKSTEIN and DELL JJ., concur.